IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

TRUSTEES OF THE NATIONAL ASBESTOS
WORKERS MEDICAL FUND,

      Plaintiff,

      vs.                                                      No. CIV 97-0827 JC/WWD

A-AA QUALITY SERVICES, INC.,

      Defendant.

**MEMORANDUM OPINION AND ORDER**

THIS MATTER came on for consideration of Defendant's Motion for Summary Judgment, filed April 23, 1998 (Doc. No. 36), and Plaintiff's Cross-Motion for Summary Judgment, filed April 23, 1998 (Doc. No. 38). The Court has reviewed the motions, the memoranda submitted by the parties, the relevant authorities, and heard oral argument on May 15, 1998.

The Court finds that Defendant's Motion for Summary Judgment and Plaintiff's Cross-Motion for Summary Judgment are not well taken and will be denied.

**Factual Background**

Plaintiff is the Trustees of the National Asbestos Workers Medical Fund ("Fund"). The Fund is a multi-employer employee health and welfare trust fund. Defendant, A-AA Quality Services, Inc. ("A-AA"), is a New Mexico corporation that works as a subcontractor on various construction projects, primarily with insulation and sprinkling systems. A-AA employs eight to twelve employees

who are members of the International Association of Heat and Frost Insulators and Asbestos Workers Local No. 76 Albuquerque-El Paso ("Union" or "Local 76").

On January 8, 1994, A-AA entered into a Collective Bargaining Agreement ("CBA") with the union.  Article XX of the CBA provides that A-AA will contribute to the Fund unless the parties "mutually agree" to alternative medical coverage for A-AA's employees.  A-AA did not make contributions to the Fund, and the parties did not mutually agree to an alternative.

On July 31, 1995, the union filed an unfair labor practice action with the NLRB.  In the NLRB complaint, the union charged that:

> (A)  On or about September 15, 1994, A-AA bypassed the Union and dealt directly with its employees in the Unit by entering into agreements with employees to pay fringe benefit contributions directly to employees either in cash or in kind.
>
> (B) Since on or about September 15, 1994, and continuing to date, the Respondent changed the terms and conditions of the Agreement by ceasing to make the required payments to the various employee benefits funds provided for under the Agreement.

On May 21, 1997, Joseph Handley, the union Business Manager and a trustee of the Fund, and Carla Mitchell, President of A-AA, executed a Release in Full of All Claims "arising from or related to any collective bargaining agreements between the parties to this Release, and those arising from or related to the consolidated actions brought before the National Labor Relations Board." (Def.'s Mem. Supp. Mot. Summ. J., Ex. B-5.)  The release did not include "any claims that may be asserted by Carday and Associates for Health and Welfare Fund payments as opposed to claims by the Union for payment of Health and Welfare benefits."[1]  Id.

---

[1] Carday and Associates, Inc., is a Maryland corporation that provides administrative and managerial services to various employee benefit plans.

On October 17, 1996, the NLRB impliedly approved the Release by issuing an order withdrawing the charges. Defendant now moves for summary judgment arguing the Release extinguished Plaintiff's present claim for non-payment of the health and welfare contributions to the Fund.

Plaintiff counters that the Release did not cover the Fund contributions. Plaintiff argues: (1) Mr. Handley did not have authority to release the claims of the Fund; (2) the Release indicates a mutual mistake between the parties; and (3) the Release, by its terms, does not include the required contributions to the Fund.

## Analysis

### I. Legal Standards

Summary judgment is appropriate "if there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). The Federal Rules of Civil Procedure provide that it is the movant's burden to demonstrate the absence of a genuine issue of material fact. See Celotex Corp. v. Catrett, 477 U.S. 317, 321-323 (1986). Once the movant has made such a showing, the "adverse party may not rest upon the mere allegations or denials of [their] pleading[s], [they] must set forth specific facts showing that there is a genuine issue for trial." FED. R. CIV. P. 56(e).

In reviewing a summary judgment motion, "[t]he evidence must be viewed in the light most favorable to the nonmoving party, Frandsen v. Westinghouse Corp., 46 F.3d 975, 977 (10th Cir. 1995), even when it is produced by the moving party." Buchanan v. Sherrill, 51 F.3d 227, 228 (10th Cir. 1995). "Summary judgment is only appropriate if there is not sufficient evidence favoring

the nonmoving party for a jury to return a verdict for that party." Biester v. Midwest Health Servs., Inc., 77 F.3d 1264, 1266 (10th Cir. 1996) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986)). "Thus, to defeat a summary judgment motion, the non-movant 'must do more than simply show that there is some metaphysical doubt as to the material facts.'" Id. (citing Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 585-86 (1986)). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Anderson, 477 U.S. at 249-250 (citations omitted).

## II.  Discussion

The language in the Release "excluding any claims that may be asserted by Carday and Associates for Health and Welfare Fund payments" ("the Carday language") is reasonably susceptible to different constructions when evaluated against the backdrop of the full Release and the surrounding circumstances. This ambiguity precludes me from granting summary judgment for either party.

By negative implication, Mr. Handley's signing of the Release, and his representations regarding Carday and Associates, may have led Defendant to conclude that the Release included the Fund's claim. Defendant knew Mr. Handley was a trustee of the Fund, and claims to have "understood the Health and Welfare claims to have been settled." (Def.'s Reply [sic] to Pl.'s. Resp., Ex. A-2.) Furthermore, if Mr. Handley had intended to exclude the Fund's claim from the Release, it seems he would have included 'the Fund' instead of Carday and Associates in the Release. Thus, Defendant may have reasonably concluded that Mr. Handley was wearing two hats when he signed the Release, and the Release may reasonably be interpreted to extinguish the Fund's claim. Consequently, there are genuine issues of material fact which preclude Plaintiff's summary judgment motion.

Defendant's motion for summary judgment fails also because of the ambiguity surrounding the Carday language. As an aside, if Mr. Handley was acting solely as the business manager of the union, and no apparent authority existed, Defendant probably loses on the case law, and not a plain reading of the Release. Agreements between a union and an employer cannot extinguish the previously established entitlements of a multi-employer benefit plan. See MacKillop v. Lowe's Market, Inc., 58 F.3d 1441 (9th Cir. 1995) and Trustees of the Four Joint Bds. Health and Welfare and Pension Funds v. Penn Plastics, Inc., 864 F. Supp. 342 (S.D.N.Y. 1994).

Wherefore,

IT IS HEREBY ORDERED that Defendant's Motion for Summary Judgment, filed April 23, 1998 (Doc. No. 36), and Plaintiff's Cross-Motion for Summary Judgment, filed April 23, 1998 (Doc. No. 38), are **denied**.

DATED this 16th day of September, 1998.

_____
**CHIEF UNITED STATES DISTRICT JUDGE**

| | |
|---|---|
| Counsel for Plaintiff: | John L. Hollis<br>John L. Hollis, P. A.<br>Albuquerque, New Mexico |
| | John Leary<br>O'Donoghue & O'Donoghue<br>Washington, D. C. |
| *Pro se* Defendant: | Carla Mitchell, President<br>A-AA Quality Services, Inc.<br>Albuquerque, New Mexico |